**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**No. 10-16519**

---

HAZEL GREEN RANCH, LLC,

Plaintiff and Appellant,

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, KEN L. SALAZAR (in his capacity as Secretary of the United States Department of the Interior), NATIONAL PARK SERVICE, DANIEL N. WENK (in his capacity as Acting Director, National Park Service), DAVID V. UBERUAGA (in his capacity as Acting Superintendent, Yosemite National Park), UNITED STATES DEPARTMENT OF AGRICULTURE, TOM VILSACK (in his capacity as Secretary of the United States Department of Agriculture), NATIONAL FOREST SERVICE, GAIL KIMBALL (in her capacity as Chief, United States Department of Agriculture. National Forest Service), and UNITED STATES OF AMERICA,

Defendants and Appellees.

SIERRA CLUB, NATURAL RESOURCES DEFENSE FUND, and THE WILDERNESS SOCIETY,

Defendant-Intervenors and Appellees.

---

Appeal from Judgment and Interlocutory Orders on F.R.C.P. 12(b) Motions
The Hon. Oliver W. Wanger – United States District Court
Eastern District of California, Fresno
Case No. 1: 07-CV-00414 OWW-SMS

---

**APPELLANT'S OPENING BRIEF**

---

Martin L. Pitha
SMITH LILLIS PITHA LLP
One Corporate Plaza Drive, Suite 110
Newport Beach, CA 92660
Telephone: (949) 209-9020 Facsimile: (949) 759-1845
email: mpitha@slplawfirm.com

Attorneys for Appellant
Hazel Green Ranch, LLC

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant Hazel Green Ranch, LLC hereby certifies that it has no parent corporation and there is no publicly-held corporation that owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

OVERVIEW ..... 1
ISSUE PRESENTED ..... 1
JURISDICTION ..... 1
STANDARDS OF REVIEW ..... 2
STATEMENT OF THE CASE ..... 2
A. Nature Of The Case ..... 2
B. Statement Of Facts ..... 4
1. Introduction: Hazel Green And The Roads At Issue ..... 4
2. The Roads Are Built ..... 6
3. The United States Patents Hazel Green to James Halstead ..... 7
4. The United States Continues To Recognize The Roads ..... 8
5. The McLean Case And The United States' Continued Admissions That The Roads Are County-Owned ..... 9
6. The Re-Alignment Of The Big Oak Flat Road ..... 10
7. The Roads Continue To Appear On United States And Mariposa County Maps ..... 13
SUMMARY OF ARGUMENT ..... 14
ARGUMENT ..... 15
I. HGR's Easement Rights Exist As A Result Of Its Status As An Appurtenant Landowner ..... 15
A. HGR Has Easement Rights As A California Landowner Across Whose Property The Roads Pass ..... 16
B. The Decisions In *Kinscherff* And *Staley* Support HGR's Position ..... 20
II. The Halstead Patent Included Easement Rights To Which HGR Has Succeeded ..... 25
CONCLUSION ..... 30
STATEMENT OF RELATED CASES ..... 31
STATEMENT OF COMPLIANCE WITH F.R.A.P. 32 ..... 32

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bacich v. Board of Control*
23 Cal.2d 343 (1943) ....................................................................3, 16

*Block v. North Dakota*
461 U.S. 273 (1983)..........................................................................15

*Eachus v. Los Angeles Ry. Co.*
103 Cal. 614 (1894) ..........................................................................16

*Exxon Chemical Patents, Inc. v. Lubrizol Corp.*
935 F.2d 1263 (Fed. Cir. 1991) ..........................................................7

*Fitzgerald Living Trust v. United States*
460 F.3d 1259 (9th Cir. 2006) ......................................................23, 28

*Hambleton Bros. Lumber Co. v. Balkin Enterprises Inc.*
397 F.3d 1217 (9th Cir. 2005) .............................................................3

*Homedics, Inc. v. Valley Forge Ins. Co.*
315 F.3d 1135 (9th Cir. 2003) .............................................................2

*Kinscherff v. United States*
586 F.2d 159 (10th Cir. 1978) ......................................................passim

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005) .............................................................2

*McFarland v. Kempthorne*
545 F.3d 1106 (9th Cir. 2008) ...............................................19, 20, 27

*McKinney v. Ruderman*
203 Cal.App.3d 109 (1962) ..........................................................16, 19

*Nuclear Info. & Res. Service v. United States Dept. of Transp.*
457 F.3d 956 (9th Cir. 2006) ...............................................................2

*Regency Outdoor Advertising, Inc. v. City of Los Angeles*
39 Cal.4th 507 (2006) .................................................................16, 17, 18

*Staley v. United States*
168 F.Supp.2d 1209 (D. Colo. 2001)........................................20, 21, 24

*United States v. Powers*
305 U.S. 527 (1939)..........................................................................27

# TABLE OF AUTHORITIES (continued)

**Page**

## CASES (continued)

*Van Buskirk v. Cable News Network, Inc.*
284 F.3d 977 (9th Cir. 2002) ....................2

## STATUTES

26 Stat. 650 (1890)....................26
16 U.S.C. § 45c....................11
16 U.S.C. § 47(e) ....................10, 11
28 U.S.C. § 1291....................1
28 U.S.C. § 1346(f)....................1
28 U.S.C. § 2409a....................1, 22
43 U.S.C. § 932 ("R.S. 2477") (*repealed by* Federal Land Policy Management Act of 1976, § 706(a), Pub. L. No. 94-579, 90 Stat. 2793) ....................8, 18, 24, 29
Cal. Stat. 1905, c. 60, p. 54....................8
Cal. Streets & Highway Code § 902....................9
Cal. Streets & Highway Code § 8352....................18

## OVERVIEW

This appeal concerns a landowner's claims to private easement rights over two public, county roads crossing the landowner's private property and the dismissal of those claims, at the pleading stage, by the District Court.

## ISSUES PRESENTED

(1) Whether a landowner can assert its private easement rights, recognized under California state law, in public, county roads crossing its property under the Federal Quiet Title Act where ownership of the roads is disputed by the Federal Government; and

(2) Whether the District Court erred in dismissing a landowner's claim to existing easements granted by a United States Patent to that landowner's predecessor in interest.

## JURISDICTION

The District Court had jurisdiction of this matter by virtue of allegations made under 28 U.S.C. sections 1346(f) and 2409a (i.e., quiet title to real property in which the United States claims an interest).

This Court of Appeals has jurisdiction pursuant to 28 U.S.C. section 1291.

The District Court's final judgment was entered on May 14, 2010. (ER 1-2.) The judgment is based upon the district court order dated on April 5, 2010, dismissing Plaintiff and Appellant Hazel Green Ranch, LLC's ("HGR's") Third Amended Complaint. (ER 3-44.) The District Court's judgment is the final, appealable order in this case.

HGR filed its notice of appeal on July 12, 2010. (ER 1778-1783) The notice of appeal was timely filed under Federal Rule of Appellate Procedure 4.

## STANDARDS OF REVIEW

A district court's dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and (b)(6) is subject to *de novo* review. *See Nuclear Info. & Res. Service v. United States Dept. of Transp.*, 457 F.3d 956, 958 (9th Cir. 2006); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Knievel, supra*, 393 F.3d at 1072. A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *See Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003); *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).

## STATEMENT OF THE CASE

### A. Nature Of The Case.

HGR filed this case to assert and determine its rights in certain county roads crossing its property pursuant to the Federal Quiet Title Act (28 U.S.C. section 2409a). HGR filed its initial complaint on March 14, 2007, and amended it on October 5, 2007 (to include other defendants). (ER 1507-1777, 1427-1506.) On July 24, 2008, the District Court granted the Federal Defendants' motion to dismiss based on lack of subject matter jurisdiction and allowed HGR leave to re-plead its claims. (ER 74-113; *see also* ER 1425-1426, 1406-1424, 1376-1405, 1363-1375.)[1]

---

[1] The Federal Defendants as of the date of the filing of the notice of appeal are: United States Department of the Interior, Ken L. Salazar, National Park Service, Daniel N. Wenk, David V. Uberuaga, United States Department of Agriculture, Tom Vilsack, National Forest Service, Gail Kimball, and United States of America. The Defendant-Intervenors and Appellees in this action are the Sierra Club, Natural Resources Defense Fund, and The Wilderness Society, who were allowed to intervene conditioned upon "strictly limiting their participation to claims or defenses not already advanced by the government." (ER 92-93, fn. 1.)

HGR filed its second amended complaint on August 13, 2008, expressly asserting its easement rights as an abutting landowner. (ER 1085-1313.) The Federal Defendants moved to strike and dismiss the complaint, and that motion was granted on October 28, 2008. (ER 45-73; *see also* ER 1081-1084, 1045-1080, 1027-1044, 1004-1026.)[2] The District Court's order found (among other things) that "[s]tate law rights of access, ingress, or egress in public roads are insufficient ownership interests to support a federal Quiet Title Act claim." (ER 62.) The District Court also dismissed HGR's claim based on existing easements granted by a United States Patent to HGR's predecessor in interest, on the grounds that no legal theory or facts were articulated demonstrating the creation of an express easement. (ER 67.) That same order granted HGR's motion to join Mariposa County as a party (made following the Court's comments at the February 4, 2008 hearing on the motion to dismiss the first amended complaint). (ER 71-73.)

On November 12, 2008, Mariposa County and HGR filed a third amended complaint. (ER 711-956; 675-710.) The Federal Defendants again moved to dismiss the complaint, and that motion was granted on April 5, 2010. (ER 3-44; *see also* ER 671-674, 620-670, 402-619, 190-401, 156-189.) HGR's claims were

---

[2] In its order, the District Court struck the claims under Federal Rule of Civil Procedure 12(f)(1) but noted as follows: "To the extent that ambiguity in the July 24, 2008 decision [concerning the First Amended Complaint] caused Plaintiff to re-file an abutting landowner claim based on the *Bacich* [*v. Board of Control*, 23 Cal.2d 343 (1943)] line of cases, striking the claims as previously dismissed is not appropriate. This does not change the outcome, however, as Plaintiff's Third and Fourth Claims would alternatively be dismissed for lack of subject matter jurisdiction for the reasons stated above." (ER 62, fn. 3.) Thus, given that the District Court recognized the ambiguity in its July 24, 2008 order and the purely legal basis for the dismissal, HGR urges this Court to apply a *de novo* standard of review with respect to the Second Amended Complaint, and not the abuse of discretion standard generally applicable to motions to strike. *See Hambleton Bros. Lumber Co. v. Balkin Enterprises Inc.*, 397 F.3d 1217, 1224, fn. 4 (9th Cir. 2005).

dismissed without leave to amend, and Mariposa County was provided until April 29, 2010 to amend its claims. (ER 3-44.) Instead of amending its claims, Mariposa County dismissed them. The District Court's judgment followed on May 14, 2010. (ER 1-2.) HGR timely filed its notice of appeal on July 12, 2010. (ER 1778-1783.)

## B. Statement Of Facts.[3]

### 1. Introduction: Hazel Green And The Roads At Issue.

Hazel Green is today an approximately 83-acre parcel of private property in Mariposa County. Hazel Green was purchased in 1998 on behalf of an entity to be formed, HGR. Hazel Green is surrounded on all four sides by federal land, with Yosemite National Park as its eastern boundary and Stanislaus National Forest as its northern, southern, and western boundaries. (ER 1086, 1092-1093.)

This case concerns two road segments: a portion of what is described as the Coulterville Road, and another which is described as the Crane Flat Road. Both of the road segments at issue pass through the private property of Hazel Green and were (since 1874 and thereafter) utilized by Hazel Green's owners and its patrons. The first of these highways came from Coulterville, California, was designated the Coulterville Road (presently identified from Coulterville to Hazel Green by Mariposa County Road designation "51"), and branched at Hazel Green south (this segment of the road is presently identified as Mariposa County Road "8006"). The second road branched off Hazel Green and continued to Crane Flat, was known as the Crane Flat Road (also sometimes referred to as the "Crane Flat Cut-off Road"), and then continued to the Yosemite Valley floor on a different road. (ER 1092.)

[3] The facts alleged herein are principally based on the Second Amended Complaint.

The roads, and their relationship to Hazel Green, are depicted by the following map (*see* ER 1089, 1119), with the Crane Flat Road segment at issue appearing in purple, and marked by global positioning system ("GPS") points on a short line to the east of Hazel Green, and the Coulterville Road segment at issue appearing in red, and marked by GPS points on a longer line to the southeast (and eventually turning east and then northeast) of Hazel Green:[4]




4 A portion of the re-routed Big Oak Flat Road, which provides access to the Yosemite Valley Floor and is discussed later in this brief, appears in green.

**2. The Roads Are Built.**

On June 30, 1864, the United States Congress granted certain portions of the Sierra Nevada Mountains known as the Yosemite Valley and as the Mariposa Big Tree Grove to the State of California "to be managed by the Governor of the State, with eight other Commissioners." Chap. CLXXIV of the Statutes at Large, passed at the 38th Congress, Session I. The Grant was accepted on April 2, 1866, and the Commissioners were appointed by the accepting Act. *See* Chapter DXXXVI of the Statutes of California, passed at the Sixteenth Session of the Legislature, 1865-66. (ER 1093.)

The Commissioners, in order to encourage development of roads which would lead to the Yosemite Valley, "did offer to grant franchises for the construction of roads within the grant, in return for which the builders would be authorized to collect tolls for use of their rights-of-way." (ER 1093, 1113.) As a result, the Coulterville and Yosemite Turnpike Company was formed to "build a wagon road from Bower Cave *through* Hazel Green and Crane Flat to an unspecified point on the boundary line of the Yosemite Grant" pursuant to a franchise granted by Mariposa County. (ER 1095, 1115 [emphasis added].) Once at Crane Flat, "they apparently intended to connect with the Big Oak Flat Road and share its route into the Valley." Mariposa County approved licenses to collect tolls on the roads in 1870. (ER 1094, 1163.)

In 1872, the turnpike company added an additional route of the road so that the right-of-way also descended from "Hazel Green, elevation 5,665 feet, . . . south through the Merced Grove of Big Trees" and headed down into the Yosemite Valley. (ER 1094.) At that point in time, both routes existed, as they do today (in their shortened form). (ER 1094.)

The turnpike company commenced regularly scheduled stage service on the Coulterville Road, through Hazel Green, on June 18, 1874. (ER 1094.) The Big

Oak Flat Road commenced service on July 17, 1874, with "a caravan of fifty-two vehicles, trailing nearly a mile back along the road." (ER 1094, 1148.) Thus, as of approximately mid-1874, there were two state and county authorized roadways passing through and connecting to Hazel Green which proceeded to the Yosemite Valley floor: the Coulterville Road (which reached Yosemite Valley passing by the Merced Grove of Trees) and the Crane Flat Road (which reached Yosemite Valley by connecting to the Big Oak Flat Road). (ER 1094.) Tolls were collected at Hazel Green, including by James Halstead (who operated a food and overnight facility there), for access to both such roads. (ER 1094, 1107.)

**3. The United States Patents Hazel Green To James Halstead.**

On October 10, 1888, the then-120 acre tract of Hazel Green was patented[5] by the United States to James Halstead, as follows: "in consideration of the premises, and in conformity with the several Acts of Congress in such case made and provided, have given and granted and by these presents do give and grant, unto the said James Halstead and to his heirs, the said Tract above described: To have and to hold the same, together with all the rights, privileges, immunities, and appurtenances, of whatsoever nature thereunto belonging unto the said James Halstead and to his heirs and assigns forever" (hereafter the "Patent" or the "1888 Patent") (ER 1095, 1167.) At that time, as noted above, the Coulterville Road and the Crane Flat Road were already in existence and utilized by their owners, Halstead, and his patrons for over five years. (ER 1095, 1107.) Thus, the owner of Hazel Green owns the land over which the Coulterville and Crane Flat Roads pass on Hazel Green. (ER 1095.)

---

[5] A land patent is an instrument by which real property is conveyed by the United States. *See, e.g., Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 935 F.2d 1263, 1267 (Fed. Cir. 1991).

At the time of the 1888 Patent to Halstead, all lands surrounding Hazel Green were owned by the Federal Government until the Federal Government began patenting lands abutting Hazel Green to private parties in the 1890s. All of such land sections (with the exception of Hazel Green) are now owned by the Federal Government because after having been patented to private parties in the 1890s, they were subsequently purchased by the Federal Government pursuant to federal statutes authorizing the purchases (with the statutes specifically preserving existing rights and rights of way), as discussed further below. (ER 1095.)

**4. The United States Continues To Recognize The Roads.**

On October 1, 1890, Congress expanded certain forest reservations, including a major portion of land which would become part of Yosemite National Park (and was at that time referred to as Yosemite Forest Reserve). (ER 1095.) The Act of October 1, 1890 expressly provided that "nothing in this act shall be construed as affecting any bona-fide entry of land made within the limits above described under any law of the United States prior to the approval of this act." (ER 1095-1096.)[6]

In the early 1900s, Hazel Green was deeded to the Curry family, founders of Camp Curry in Yosemite Valley, and the entire 120-acre property remained in the Curry family's hands until 1938. (ER 1096.) In 1905, California re-ceded and re-granted to the United States the "Yosemite Valley" and the "Mariposa Big Tree Grove." Cal. Stat. 1905, c.60, p. 54. (ER 1097.) The re-cession and re-grant stated: "Provided, however, that the re-cession and re-grant hereby made shall not affect vested rights and interests of third persons." (ER 1097.) Thus, all of the

---

[6] A year later, in an opinion issued by the United States Office of the Assistant Attorney General dated December 7, 1891, addressed to the Secretary of the Interior, described the Roads as "deriv[ing] their privileges from the laws of California and Section 2477 R.S. [R.S. 2477]," enacted as part of the Mining Act of July 26, 1866. (ER 718, 821-835.)

rights of Mariposa County and Hazel Green remained, including the right to have access to the Valley floor.

In 1911, the Mariposa County Board of Supervisors declared various segments of the Coulterville to Yosemite Road to be free county highways (*see generally* Cal. Streets & Highway Code section 902) on which no tolls could be charged. (ER 1097, 1163-1164.) Specifically, on September 19, 1911, the Mariposa County Board of Supervisors declared "[t]hat portion of the Coulterville and Yosemite Turnpike Road beginning at Hazel Green and running thence to terminus near Cascade Falls, be and the same is hereby declared a public highway." (ER 1097, 1163-1164.) The federal government subsequently sought to purchase the entire Coulterville to Yosemite Road from Mariposa County, but the County refused to sell it. (ER 1097, 1187.) The roads continued to be used as roads thereafter.

**5. The McLean Case And The United States' Continued Admissions That The Roads Are County-Owned.**

In 1916, Mary Helen McLean filed a lawsuit against the County of Mariposa and other defendants, including Yosemite National Park Superintendant George Sovulewski and the United States of America, concerning the roads at issue. A Stipulation of Facts was entered describing the Coulterville Toll Road, including the full description of the road from Bower Cave through Hazel Green and then to the Yosemite Valley Grant, and specifically including (but not limited to) the branch road from the house of Andrew Gass at Hazel Green and thence easterly a distance of five and one fourth miles to a point on Crane Flat (i.e., the Crane Flat Road). In that lawsuit, Mr. Sovulewski, represented by the United States Attorney's Office, filed an answer stating "[t]hat continuously, for a period of more than five years prior to the commencement of this action, the Defendant, County of Mariposa, has worked said alleged toll road and kept the same in repair,

and during all of said time, said County of Mariposa has been in undisputed possession of, and has owned and controlled said toll road and has claimed the same as a public highway of the said county adversely to the whole world, and for more than five years prior to the commencement of this action, said highway has been abandoned to the public and has been by the public accepted and used during all of said time, as a public highway, free of all toll and free of any right or interest of the Plaintiff or any of her alleged predecessors in title." (ER 1163-1164; *see also* ER 889-916.)

Judgment was thereafter entered in 1917, declaring the County of Mariposa "owner in that portion of the said road as follows and that Plaintiff has no right, title or interest therein commencing at Bower Cave on the North Fork of the Merced River in the Northwest Quarter of Section 19, Township to South, Range 18 East, and M.D.B.&M. to Hazel Green on said Road, a distance of 12 miles" and that McLean, the Plaintiff, was the "the owner in fee of the franchise to collect tolls" on the balance of the Coulterville Road, including the branch road described above. (ER 1164, 918-920.)[7]

**6. The Re-Alignment Of The Big Oak Flat Road.**

In 1937, Congress authorized the Secretary of the Interior to acquire several sections of privately owned land adjacent to certain of the boundaries of Yosemite National Park. (July 9, 1937, chapter 469, Secs. 1,2, 50 Stat. 485, 486, codified at 16 U.S.C. section 47e.) (ER 1098-1099.) This proposed acquisition of private lands covered virtually all of the land thru which the Crane Flat Road passed from Hazel Green to Crane Flat, and substantially all of the land that the Mariposa County Coulterville Road passed thru on its route past the Merced Grove of Trees as it descended to the Yosemite Valley floor. (ER 1098-1099.) It was the

---

[7] The United States and Mr. Sovulewski were not parties to that judgment. (ER 919.)

acquisition authorized by this 1937 statute that enabled the realignment of the Big Oak Flat Road from what would become the new Northern Entrance to the Park, to Crane Flat (constructed in 1969), and from Crane Flat to the Valley floor (constructed in 1940). (ER 1099.) One of those parcels was the "northwest quarter of the northeast quarter section 15, township 2 south, range 19 east" which was the easternmost 40-acre parcel of Hazel Green. The remainder of the parcels consisted of the land, once actually acquired, and including this Hazel Green parcel, to which the Big Oak Flat Road (Highway 120) would be relocated. (ER 1099, 1211-1212.) The statute further provided

> "when title to the aforesaid privately owned lands has been vested in the United States, all of the lands described in this section shall be added to and become a part of the Yosemite National Park and shall be subject to all laws and regulations applicable thereto; *provided, that nothing in this section or section 47f of this title shall be construed to affect any valid existing rights.*" (Emphasis added).[8] (ER 1099.)

---

[8] *See also* 16 U.S.C. § 45c. ("Prior claims, locations, and entries: . . . . Nothing herein contained shall affect any valid existing claim, location, or entry established prior to July 3, 1926, under the land laws of the United States, whether for homestead, mineral, right-of-way, or any other purpose whatsoever, or shall affect the rights of any such claimant, locator, or entryman to the full use and enjoyment of his land . . . .") This language is consistent with other land acquisitions near the Western boundary of Yosemite National Park by the United States. For example, in 1930, and pursuant to 14 Stat. 1486 (1929), President Hoover, by proclamation, added approximately 9,000 acres to the Park, with the proviso that "[n]othing herein shall effect any existing valid claim, location, or entry on said lands made under the land laws of the United States whether for homestead, mineral, right of way, or any other purposes whatsoever, or shall affect the right of way of any such claimant, locator, or entryman to the full use and enjoyment of his land." (ER 1099, fn. 1.)

As a result, in 1938, at the request of the United States Government, and pursuant to July 9, 1937, Chapter 469, Secs. 1,2, 50 Stat. 485,486, codified as 16 U.S.C. section 47e, Mrs. Curry sold the property's eastern 40 acres to the federal government in conjunction with the government's plans for a realignment of Highway 120 (Big Oak Flat Road). (ER 1100, 120-1221, 1223.) The recorded deed for the transfer of the eastern 40 acres shows that the parties recognized that existing rights-of-way passed through and serviced Hazel Green, and that the transfer would not impact those rights. The deed stated explicitly that it did "not cover any right, title, or interest which the State of California may have in [the] lands for road, highway or other purposes." (ER 1100, 1220-1221.) This specifically complied with the provisions of the July 9, 1937, statute that "nothing in this section or section 47f of this title shall be construed to affect any valid existing rights." The United States also accepted the Curry Deed as specifically required by the law authorizing the purchase. (ER 1100.)

Until 1939, all of the lands on which the Crane Flat Road and the Coulterville Road segments now intersect with the now rerouted Big Oak Flat Road were in private ownership and the owners of the lands were utilizing those roads as private rights-of-way. (ER 1100.) The United States never acquired those rights-of-way, and they are in existence and unimpaired today. (ER 1100.)

In 1940, the NPS re-routed the Big Oak Flat Road from Crane Flat south to the Valley floor in 1940. (ER 1100.) Then, in 1969, a new segment of the Big Oak Flat Road which now runs from the Big Oak Flat Entrance (the North Entrance) of the Park, past Hazel Green and to the 1940 rerouted Road at Crane Flat, was constructed in 1969. (ER 1100-1101.) Throughout the period following the sale of the eastern 40 acres, the owners of Hazel Green continued to utilize both the Coulterville Road and the Crane Flat Road Cut-off. (ER 1101.) The Big Oak Flat Road (sometimes referred to as "Highway 120" on various maps) became

the main highway entering Yosemite from the newly established North Entrance following its realignment in 1969, built along a new route that passed directly through what had been, until 1938, the eastern 40 acres of Hazel Green. (ER 1101.) This new route intersected in two separate places both highways (the Crane Flat Road and the Coulterville Road) which the owners of Hazel Green had utilized in their use of the property since 1874. (ER 1101.)

Thus, as it had been since 1874, Hazel Green had two separate access roads to the Yosemite Valley floor in 1969 (utilizing either the Crane Flat Road segment or the Coulterville Road segment). (ER 1101.) These two separate segments exist today intersecting with the realigned Big Oak Flat Road. (ER 1104.) However, the Federal Government has locked gates on the Coulterville Road east of Hazel Green, depriving its use as access. (*See*, *e.g.*, ER 1303 [depicting gate at eastern edge of Hazel Green].)

**7. The Roads Continue To Appear On United States And Mariposa County Maps.**

The roads at issue in this appeal continue to physically exist and be represented on federal maps as county roads (contradicting the assertion that they are federally owned). Examples include:

- United States Geological Survey Maps continue to show both roads running from Hazel Green (ER 1101-1102, 1229-1232);
- County and federal maps show the Roads as Mariposa County Road 51 (the Crane Flat Road) and County Road 8006 (the Coulterville Road) (ER 1101, 1234-1235);
- the Coulterville Road is on the back cover (including the portion going thru Hazel Green) of the Yosemite Road Guide (May 2005 printing of the 1989 revision) which is currently available for purchase in Yosemite National Park (ER 1101-1102, 1294-1297);

- the latest edition of the National Geographic Map of Yosemite National Park, made "in cooperation with the National Park Service," shows the Coulterville Road as it runs through Hazel Green and continues to its intersection with Highway 120 (Big Oak Flat Road) (ER 1101, 1299-1301); and
- the Stanislaus National Forest Route Inventory Map, January 18, 2006, which is the latest edition, also depicts the Coulterville Road running through Hazel Green to its intersection with the Big Oak Flat Road and specifically designates the Coulterville Road running from Hazel Green to Highway 120 as a "State/County/Non-Forest Road[]" (ER 1102, 1303).

## SUMMARY OF ARGUMENT

HGR's claims in its first and second amended complaint were based on the fact that it is a landowner across whose property public, county-owned roads cross. As a result, under California law, HGR has an easement interest in those roads. Despite historical maps spanning the period from 1890 through 2006 commissioned by the Federal Government admitting the roads are county-owned, the Federal Defendants disputed ownership of the roads, maintaining that the roads are federally owned (without, at this pleading stage of the proceedings, presenting evidence on that subject).

The District Court ultimately struck HGR's claims as an easement holder (based on its rights as an abutting landowner) without leave to amend in connection with dismissing the Second Amended Complaint. The effect of that order is that a landowner who asserts an easement right and alleges that right based on the fact that the road in question is a county road crossing its property may not pursue those rights where the Federal Government claims, at the pleading stage

and without evidence, that the roads are federally owned instead.

The District Court also struck HGR's easement claims based on the Patent (which HGR alleged conveyed the United States' rights to the roads, as they traversed federal property at that time) on the grounds that the Patent did not convey any such easements. That order means that a successor to a patentee, who used the roads and operated tourist facilities at Hazel Green (on federal property, no less) prior to the patent and then received a patent granting all "rights, privileges, immunities, and appurtenances," receives no rights to use the land and the roads as previously utilized and no access to and from the Yosemite Valley floor notwithstanding that historical, undisputed access.

## ARGUMENT

### I. HGR's Easement Rights Exist As A Result Of Its Status As An Appurtenant Landowner.

Under the Quiet Title Act, "the United States, subject to certain exceptions, has waived its sovereign immunity [permitting] plaintiffs to name it as a party defendant in civil actions to adjudicate title disputes involving real property in which the United States claims an interest." *Block v. North Dakota*, 461 U.S. 273, 275-76 (1983) (footnote omitted). The Act provides "the exclusive procedure by which a claimant can judicially challenge the title of the United States to real property." *Id.* at 276-77.

The roads at issue have been in existence and utilized by the owners of the roads, their visitors, and people traversing them through Hazel Green since 1874. Hazel Green was granted to Mr. Halstead "and to his heirs and assigns forever" by the United States in 1888. HGR has succeeded to those rights and (separate and apart from its rights granted by the 1888 Patent) has private easement rights to access to its property across any state or county public highway that abuts its

property. Those claims were asserted as HGR's Third and Fourth Causes of Action in its Second Amended Complaint, to wit, that HGR has private easement rights in the roads as an appurtenant landowner. (ER 1109-1111.) The District Court dismissed those claims without leave to amend.

### A. HGR Has Easement Rights As A California Landowner Across Whose Property The Roads Pass.

In California, "an owner of property abutting upon a public [highway] has a *property right in the nature of an easement* in the street which is appurtenant to his abutting property and which is his private right, as distinguished from his right as a member of the public." *Bacich v. Bd. of Control*, 23 Cal.2d 343, 349-50 (1943) (emphasis added); *McKinney v. Ruderman*, 203 Cal.App.2d 109, 119 (1962); *see also Eachus v. Los Angeles Ry. Co.*, 103 Cal. 614, 617–18 (1894). Thus, landowners enjoy certain benefits associated with the location of their land next to the road, including easement rights in roads. *See Regency Outdoor Advertising, Inc. v. City of Los Angeles*, 39 Cal.4th 507, 517 (2006) (inverse condemnation action).

California courts have historically recognized such easement rights. In *Regency Outdoor Advertising, Inc.*, *supra*, the California Supreme Court described the historic enforceability of such rights:

> Beginning in the 1800s, American courts began to recognize a number of "abutter's rights" enjoyed by property owners along public roads. (*See* Wilson, *Billboards and the Right to Be Seen from the Highway* (1942) 30 Geo. L.J. 723, 729-730.) These rights, described as being in the nature of easements and "deduced by way of consequence from the purposes of a public street" (*Perlmutter v. Greene* (1932) 259 N.Y. 327, 182 N.E. 5, 6), include the right of access to and from the

> road, and the right to receive light and air from the adjoining street. (*See Eachus v. Los Angeles etc. Ry Co.* (1894) 103 Cal. 614, 617-618, 37 P. 750; *Barnett v. Johnson* (1863) 15 N.J.Eq. 481, 487-488; 10A McQuillin, The Law of Municipal Corporations (3d ed.1999) §§ 30.65 at p. 426; Pepin, *California and the Right of Access: The Dilemma Over Compensation* (1965) 38 So.Cal. L.Rev. 689, 690.) Judicial recognition of these rights derives from the perceived expectations of those who own or purchase property alongside a public street, to the effect that the land enjoys certain benefits associated with its location next to the road. (*See Colberg, Inc. v. State of California ex rel. Dept. Pub. Wks.* (1967) 67 Cal.2d 408, 424, 62 Cal.Rptr. 401, 432 P.2d 3; *Barnett v. Johnson, supra,* 15 N.J.Eq. at pp. 488-489; *Bohm v. Metropolitan El. Ry. Co.* (1892) 129 N.Y. 576, 29 N.E. 802, 805-808; *Lohr v. Metropolitan Elevated R. Co.* (1887) 104 N.Y. 268, 10 N.E. 528, 531-532; cf. Civ.Code, § 831.) *Regency Outdoor Advertising, Inc., supra,* 39 Cal.4th at 517.

These rights, according to California courts, allow for ingress and egress to and from the property from the road, as well as other associated rights (including, for example, the "right to be seen"):

> In *Williams [v. Los Angeles Ry. Co.], supra,* 150 Cal. 592, 89 P. 330, we recognized an enforceable right to be seen under such circumstances. The plaintiff in *Williams* owned a streetside retail curio store in Los Angeles. (*Id.* at p. 593, 89 P. 330.) The defendant, the operator of an electric street railway, built a switching tower on the sidewalk in front of the plaintiff's store. (*Id.* at pp. 593-594, 89 P.

330.) The superior court denied the plaintiff's request for injunctive relief. (*Id.* at p. 593, 89 P. 330.) On appeal, though affirming the denial of an injunction (*id.* at p. 597, 89 P. 330), we acknowledged that lots fronting upon a street possess certain easements in the street in front of and adjacent to the lot, and that "[a]ny obstruction to the use of the street which impairs or destroys these easements is a private injury, special and peculiar to the owner of the lot." (*Id.* at p. 594, 89 P. 330.) We identified these abutter's easements as *the right of access to and from the lot by means of the adjacent street*, the right to receive light and air from the street, and "[t]he right to have the street space kept open so that signs or goods displayed in and upon the lot may be seen by the passersby, in order that they may be attracted as customers to patronize the business carried on thereon." (*Id.* at pp. 594-595, 89 P. 330.) *Regency Outdoor Advertising, Inc.*, *supra*, 39 Cal.4th at 519 (emphasis added).[9]

The roads at issue in this case have been used for egress and ingress from Hazel Green to the Yosemite Valley floor since their construction in the 1870s as California-authorized roads and, as an appurtenant landowner, HGR enjoys private easements in them under California law. Under California law, even if the state or county were to abandon those roads the private easement remains. *See* Cal. Streets

[9] The court in *Regency Outdoor Advertising, Inc.* proceeded to note that "*Williams, supra*, 150 Cal. 592, 89 P. 330, however, did leave open the possibility that the landowner might lack enforceable abutter's rights were it shown that the railway's switching tower, for which the city had implicitly granted a license, necessarily *had* to be placed on the sidewalk or street, instead of upon nearby private property. (*Id.* at pp. 595-596, 89 P. 330.)" *Regency Outdoor Advertising, Inc.*, *supra*, 39 Cal.4th at 519, fn. 5. Obviously, that is not the case here.

& Highway Code § 8352.[10] HGR's rights include the right to use the easements. As the Court of Appeal in *McKinney* summarized:

> An owner of land has *a right of access to and from his property via an abutting street which constitutes an easement* that he enjoys as an incident of this ownership that 'is separate and distinct from the right of the general public in and to the street' (*People ex rel. Dept. of Public Works v. Russell*, 48 Cal.2d 189, 195, 309 P.2d 10, 15; *Rose v. State of California*, 19 Cal.2d 713, 726-728, 123 P.2d 505); extends along the same *in both directions* to the next intersecting street (*Bacich v. Board of Control*, 23 Cal.2d 343, 354, 144 P.2d 818); and exists whether he does or does not own the fee in the street. (*Fairchild v. Oakland & Bay Shore Ry. Co.*, 176 Cal. 629, 169 P. 388.) Of necessity *such easement includes his right* that the general public may use this means of access to and from his property. The plaintiffs do not seek to abate a public nuisance. Their action is directed to *the preservation of the private easement which is an incident to their ownership of the land abutting the subject street*. . . . The defendants completely obstructed the southerly portion of West Sunny Dunes Road and thereby caused a substantial interference with *the plaintiffs' easement*, giving rise to a cause of action. (*Rose v. State*

---

[10] To the extent that Mariposa County chose to not continue prosecuting its claims (which were asserted under R.S. 2477, a statute discussed later in this brief) after being joined as a party, its failure to do so does not and should not prejudice HGR's claims as a private easement holder. *See generally* Cal. Streets & Highway Code § 8352 (county "vacating" a road -- defined as the "complete or partial abandonment or termination of the public right to use a street, highway, or public service easement" [Cal. Streets & Highway Code § 8309] -- does not affect private easement rights).

*of California*, *supra*, 19 Cal.2d 713, 728, 123 P.2d 505.) *McKinney*, *supra*, 203 Cal.App.2d at 119 (emphasis added).

HGR asserted easement rights in the roads based on long-standing California authorities recognizing the existence of such rights. In *McFarland v. Kempthorne*, 545 F.3d 1106 (9th Cir. 2008), the Ninth Circuit affirmed summary judgment against a landowner's claims for easement by necessity, express easement (by patent), and implied easement by use. The Ninth Circuit specifically noted that the plaintiff's position was "undermined by his own representation that his 'predecessor's . . . access into his property . . . was not protected by *any county road easement or other guarantee* of continued access.'" *Id.* at 1111 (emphasis added). HGR made that allegation – that it (like its predecessors) has rights as an abutting landowner. However, the District Court stated that "HGR reads too much into *McFarland's* language," and "whether a county road easement is a title interest sufficient to satisfy the Quiet Title Act was not at issue in *McFarland*." (ER 66, fn. 5.) The District Court's conclusion misses the mark: the Plaintiff in *McFarland* sought to quiet title in an easement (*see* 545 F.3d at 1110), and the Ninth Circuit's reliance on the statement in that case that the plaintiff admitted no county road easement applied must have meaning. HGR respectfully suggests that reference to county road easements supports the argument that an easement cognizable under the Quiet Title Act can exist in a county road, as HGR sought in this case, and that the District Court's decision rejecting the recognition of those rights was erroneous.

### B. The Decisions In *Kinscherff* And *Staley* Support HGR's Position.

The District Court, applying 10th Circuit authorities (*Kinscherff v. United States*, 586 F.2d 159, 161 (10th Cir. 1978) and *Staley v. United States*, 168

F.Supp.2d 1209 (D. Colo. 2001)), ruled that "the *Bacich* line of cases does not create a property right that falls within the Quiet Title Act's limited waiver of sovereign immunity. State law rights of access, ingress, or egress in public roads are insufficient ownership interests to support a federal Quiet Title Act Claim." (ER 62.) That ruling was erroneous. No Ninth Circuit decision has held that a property owner through whose property a county road passes does not have the benefit of state law providing that owner with easement rights in those roads. In fact, the decisions in *Kinscherff* and *Staley* support HGR's position.

The court in *Kinscherff* recognized that "[t]he legislative history of 28 U.S.C. s 2409a indicates that Congress intended easements to be included in the real property rights adjudicated in a quiet title action. The House Report states: 'The quieting of title where the plaintiff claims an estate less than a fee simple *an easement* or the title to minerals is likewise included in the terms of the proposed statute.' H.R.Rep.No. 92-1559, 92d Cong., 2d Sess. reprinted in (1972) U.S.Code Cong. & Admin.News 4552." *Kinscherff*, *supra*, 586 F.2d at 161 (emphasis added).

On the basis of that legislative history demonstrating that the Quiet Title Act encompasses claims to estates less than fee simple (such as an easement or title to minerals), the Tenth Circuit Court of Appeal in *Kinscherff* ultimately held that the plaintiff's claim of an interest in real property by virtue of an implied easement of necessity *could* properly be raised in a quiet title action. The court remanded the case for determination of, among other things, the existence of such an easement. 586 F.2d at 161; *see also Staley*, *supra*, 168 F.Supp.2d at 1213-14 (easements are real property interests subject to quiet title actions, and thus court found that it had jurisdiction to hear plaintiff's claim for relief alleging the existence of an easement based on an implied right of ingress and egress to a public road abutting private property pursuant to federal law).

Importantly, in the *Kinscherff* decision, the court noted that "[t]he plaintiffs . . . do not assert that their interest is an easement or any similar right; instead, as mentioned above, the right is claimed by them as members of the public." 586 F.2d at 160. "Members of the public as such do not have a 'title' in public roads. To hold otherwise would signify some degree of ownership as an easement. It is apparent that a member of the public cannot assert such an ownership in a public road. . . . Thus the "interest" plaintiffs seek to assert as part of the public is not of such a nature to enable them to bring a suit to quiet title." *Id.* at 160-61. That is a stark contrast to this case, where HGR asserted an easement right as *a private landowner across whose land the roads cross*, and not simply as a member of the public seeking to utilize the roads.

The court in *Kinscherff* then recognized the legislative history of 28 U.S.C. section 2409a and Congress's intent to include easement claims. Importantly, the Court then held:

> An easement of necessity for some purposes *could possibly have arisen* when the United States granted the patent to plaintiffs' predecessor in interest. The complaint so asserts. While nothing ordinarily passes by implication in a patent, *Walton v. United States*, 415 F.2d 121 (10th Cir.), an implied easement may arise within the scope of the patent. *Superior Oil Co. v. United States*, 353 F.2d 34 (9th Cir.). In *Superior Oil*, which involved an alleged implied right of access over a road on Hopi land to the plaintiff's leasehold, the court stated: "The scope and extent of the right of access depends . . . upon what must, under the circumstances, be attributed to the grantor either by implication of intent or by operation of law founded in a public policy favoring land utilization," (*citing* 2 Thompson, Real Property, s

> 362). 353 F.2d at 36. In *United States v. Dunn*, 478 F.2d 443 (9th Cir.), the court held that defendants *were entitled to a hearing* to determine whether their patent included an implied easement to construct an access road across federal land. With the dismissal on motion the issues as to the existence of an implied easement of necessity, its extent, or whether this road is such an easement, were not considered. *These are each mixed issues of fact and law. The allegations in the complaint adequately raised the claim of easement of necessity in the lands of the United States, and an easement of such nature is an interest which can be properly raised in a quiet title action under 28 U.S.C. s 2409a. The facts thus must be developed.* We, of course, express no opinion as to whether such an easement here exists, nor its extent. *Id.* at 161 (emphasis added).

Here, HGR raised its easement rights in its Second Amended Complaint. However, unlike the plaintiffs in *Kinscherff*, HGR did not assert its rights merely as a member of a public – it did so as a landowner across whose private land the roads pass and as a patentee of the United States when those easement rights were already in existence (since the 1800s).

Further, HGR raised rights of easements by necessity in its Third Amended Complaint (ER 742-750), also dismissed by the District Court, which assumed that Hazel Green could not show that "no other access existed at the time of severance" (ER 33-38) and despite the mixed questions of fact and law *Kinscherff* recognizes are raised by such claims. *Kinscherff*, 586 F.2d at 161. For that reason, the District Court not only erred in dismissing the Second Amended Complaint, but it

also erred by dismissing HGR's claims of easement by necessity raised in the Third Amended Complaint.[11]

In sum, the *Kinscherff* decision stands for the proposition of recognizing easement rights (aside from those asserted by members of the public who do not assert any property right other than as members of public) as a basis for finding jurisdiction under the Quiet Title Act. It also stands for the proposition that claims for easements by necessity raise mixed questions of fact and law. Those holdings support HGR's position that dismissal at the pleading stage was not warranted.

The decision in *Staley* is even more distinguishable and even more helpful to HGR's position given that the plaintiffs in that case did not assert an interest in a road that traversed their property. Instead, they sought a "declaration of a road that *would* provide access" across land owned by the defendants to an existing public road. *Staley*, 168 F.Supp.2d at 1211 (emphasis added). The plaintiffs relied on R.S. 2477 to create their right in a "proposed road" to access that public road. *Id.*[12] While the court dismissed that claim, it ultimately decided it had jurisdiction to hear the plaintiffs' claim for "an implied right of ingress and egress pursuant to

---

[11] In so doing, the District Court stated that HGR had alleged the claim twice previously. (ER 35.) That statement was incorrect: HGR raised its claim of easement by necessity in the Third Amended Complaint. (ER 742-750.) Given the allegation that Hazel Green was surrounded by land owned by the United States at the time of the Patent to Halstead (ER 718), HGR stated a cognizable claim that an easement by necessity (to the extent no prior easement could be found to exist) was created at that time. *See generally Fitzgerald Living Trust v. United States*, 460 F.3d 1259, 1266 (9th Cir. 2006) (discussing elements for easement by necessity).

[12] R.S. ("Revised Statute") 2477 is an 1866 act of the United States providing that "the right-of-way for the construction of highways across public lands not otherwise reserved for public purposes is hereby granted." *See* 43 U.S.C. § 932 ("R.S. 2477") (*repealed by* Federal Land Policy Management Act of 1976, § 706(a), Pub. L. No. 94-579, 90 Stat. 2793).

federal law." *Id.* at 1213-14 (*citing Kinscherff*, *supra*, 586 F.2d at 161 and its citation to H.R.Rep. No. 92-1559).[13]

Here, HGR asserted rights to existing roads under its easement rights to roads that exist and pass over its property. For these reasons, the decisions in *Kinscherff* and *Staley* do not support the District Court's order of dismissal. Those authorities recognize the same authorities cited by HGR – to wit, the House Report concerning the Quiet Title Act and the fact that an easement can be a basis for a claim thereunder. For those reasons, the District Court's judgment should be reversed.

## II. The Halstead Patent Included Easement Rights To Which HGR Has Succeeded.

Setting aside the issue of whether HGR had easement rights as an appurtenant landowner cognizable under the Quiet Title Act, the Halstead Patent provides for the easement rights that HGR seeks to enforce. The Patent states that:

> "[I]n consideration of the premises, and in conformity with the several Acts of Congress in such case made and provided, have given and granted and by these presents do give and grant, unto the said James Halstead and to his heirs, the said Tract above described [i.e., the 120 acres then comprising Hazel Green]: To have and to hold the same, together with all the rights, privileges, immunities, and

---

13 The District Court, in analyzing the decision in *Staley*, focused on the plaintiffs' claim in that case under R.S. 2477 (i.e., members of the public having rights in public roads), but it did not acknowledge the portion of the decision "alleg[ing] the existence of an easement pursuant to federal law." *Staley*, 168 F.Supp.2d at 1213-14. Of course, that is what HGR did in this case, by alleging the existence of easements cognizable as property interests.

*appurtenances, of whatsoever nature thereunto belonging* unto the said James Halstead and to his heirs and assigns forever." (ER 1167.)

As HGR asserted, the roads at issue were built prior to the Patent, were used by Halstead (and others, such as those who paid tolls) prior to the Patent, and provided those users access to Crane Flat and the Yosemite Valley floor starting in 1874. (ER 1094.) HGR adequately alleged both the history of how the roads were constructed and, subsequently, how Hazel Green and the roads were utilized, most notably by Halstead and others *before the Patent*. (ER 1094.) Specifically, HGR has alleged that the Commissioners appointed as a result of the 1866 land grant to California by the United States "did offer to grant franchises for the construction of roads within the grant, in return for which the builders would be authorized to collect tolls for use of their rights-of-way." (ER 1094.) Two companies were then formed who constructed the roads, and Mariposa County approved licenses for toll collection. (ER 1094.)

In 1874, the Roads began to be used for "vehicular traffic." (ER 1094.) Halstead began collecting tolls at Hazel Green in 1874, and he began operating lodging facilities there in 1877. (ER 1095.) These activities continued up to the 1888 Patent, and thereafter. (ER 1095.)

In sum, the roads were privately built by private parties across Hazel Green with the authority of Mariposa County, traversed United States and private property on their route to the Yosemite Valley,[14] and were used by Halstead (and

---

[14] Even the legislation by which certain private property between Hazel Green and the Valley floor began to become acquired by the Federal Government (first enacted in 1890) excepted the rights of way. *See* 26 Stat. 650 (wherein Congress expanded certain forest reservations, including a portion of land which would become part of Yosemite National Park and was at that time referred to as Yosemite Forest Reserve, but expressly provided that "nothing in this act shall be

those from whom he took tolls at his operation on Hazel Green) continuously before and after the 1888 Patent.[15] The Federal Defendants' position, in essence, is that they had no easement rights in those roads to give Halstead (although the roads are somehow purportedly federally-owned today) or, alternatively, that Halstead had no easement rights which could be recognized by such a Patent (despite the fact that he operated lodging facilities there for 11 years prior to the Patent, and his guests used the roads for 14 years prior to the Patent).

The term "appurtenances" -- the very term which appears in the Halstead Patent -- includes easements. *Fitzgerald Living Trust*, *supra*, 460 F.3d at 1267 (word "appurtenance" includes an existing easement although, by itself, the inclusion of the word appurtenance in a patent or deed it does not "*create* the easement") (emphasis added). HGR has alleged that the easement existed at the time of the Halstead Patent because, for 14 years prior, the roads not only existed but Halstead used the roads, collected tolls for the roads, and controlled passage on the roads for toll-paying users (to say nothing of the Hazel Green property being appurtenant to the roads). Thus, there is no question that HGR has alleged that easements existed at the time of the Patent and were expressly recognized therein, not that they were "create[d]" by the Patent.

HGR did not contend that the Patent "created" the easements in the roads. The roads already existed and were being used. The Patent by its express terms recognized those "appurtenances" and granted them to Halstead. HGR has

---

construed as affecting any bona-fide entry of land made within the limits above described under any law of the United States prior to the approval of this act"). Importantly, no such land between Hazel Green and what is now the "new" Big Oak Flat Road was acquired by the Federal Government until 1920, at the earliest.

[15] Maps appended to each of HGR's amended complaints demonstrate the existence of the Roads by 1880, long prior to the Patent. (*See, e.g.*, ER 1145-1146.)

succeeded to those rights, and those rights should be recognized. *See generally United States v. Powers*, 305 U.S. 527, 531-33 (1939) (land patent that provided all "rights, privileges, immunities, and appurtenances, of whatever nature thereunto belonging" but which did not expressly discuss water rights did not serve as a limitation on patentees' right to water).

As discussed above, in *McFarland*, *supra*, 545 F.3d 1106, the Ninth Circuit affirmed a grant of summary judgment when a landowner did not allege an easement existed over the road in question prior to a patent, specifically observing that the plaintiff's argument was "undermined by his own representation that his 'predecessor's . . . access into his property . . . was not protected by *any county road easement or other guarantee* of continued access.'" *Id.* at 1111 (emphasis added). Here, HGR presented that contention: that all rights that the United States enjoyed in the roads as the landowner through whose land the roads crossed passed to Halstead and then, ultimately, to HGR.

Instead of recognizing this issue as mixing law and fact (*Kinscherff*, 586 F.2d at 161), the District Court dismissed this claim at the pleading stage, relying on *Fitzgerald Living Trust*, which is readily distinguishable. The landowners in *Fitzgerald Living Trust*, succeeded to a patent issued in 1920 which conveyed "the appurtenances of" the property. The plaintiff landowners contended these appurtenances included a nine-mile "rough trail" that traversed the property and eventually connected it to a forty-six mile wagon road. Notably, the plaintiffs' predecessor (Tillman) who received the patent accessed the property by traversing federal land or third parties' land. Unlike HGR in this case, the plaintiffs in *Fitzgerald Living Trust* did not allege that Tillman or others used the "rough trail" as access, or any other feature of it that could suggest that trail even became a road at any time. *Fitzgerald Living Trust*, *supra*, 460 F.3d at 1267 ("even assuming that the rough trail noted in the 1916 survey became FDR 56B, we conclude that the

language 'with the appurtenances thereof' lacks the intent and the specificity to convey an easement over the trail"). The Ninth Circuit affirmed the trial court's grant of summary judgment as a result.

In this case, Halstead *used* the roads (and did so to his economic benefit by collecting tolls and building a lodging facility nearby) before and after the United States' Patent to him. The roads were not a "trail" which may or may not have followed the path of a subsequent road, but rather federal, state, and county-government authorized roads providing ingress and egress to the Yosemite Valley (*see* ER 1094), passing through Hazel Green before and after the time of the Patent, and continuing to be used as such (until being barred by the Federal Government [*see*, *e.g.*, ER 1303 (depicting gate at eastern edge of Hazel Green)]). Notably, the same roads were subsequently used by automobiles. (*See* ER 1095.) Unlike the landowners in *Fitzgerald Living Trust*, HGR is not a landowner seeking to convert a "rough trail" into an easement without demonstrating that the road was used by its predecessor or otherwise known to the parties. Instead, HGR demonstrated the historical use of the Roads before and after the Patent – uses which demonstrate an easement existed prior to the Patent.[16]

The roads at issue in this case were asserted to be county roads in which HGR has an easement as a private landowner across whose property the roads traverse. The roads derived from a federal grant (pursuant to R.S. 2477, by which such roads could be built), followed by: a grant by the United States to California of the Yosemite Valley in 1864, California's re-grant back to the United States of that property in 1905 (reserving all rights, including "vested rights and interests of third persons"), the United States' purchase of land adjacent to Yosemite National Park (which, again, expressly did not "affect any valid existing rights"), and Ms.

---

16 The decision in *Fitzgerald Living Trust* was, as in *McFarland*, the result of a summary judgment motion.

Curry's sale in 1938 to the United States of the eastern 40 acres of Hazel Green (through which the roads pass today) which, among other things, reserved all rights, title, or interest "which the State of California may have in [the] lands for road, highway or other purposes." HGR presented those facts in the District Court, and should be given an opportunity to demonstrate, as a matter of fact and law, its easement rights in the roads.

## CONCLUSION

For the foregoing reasons, HGR respectfully requests that the Judgment be reversed.

Dated: February 11, 2011

Respectfully submitted,

/s/ Martin L. Pitha
Martin L. Pitha
SMITH LILLIS PITHA LLP
One Corporate Plaza Drive, Suite 110
Newport Beach, CA 92660

Attorneys for Appellant
Hazel Green Ranch, LLC

## STATEMENT OF RELATED CASES

Plaintiff and Appellant HGR is unaware of any related cases.

## STATEMENT OF COMPLIANCE WITH F.R.A.P. 32

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,385 words, excluding parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, 14-point Times New Roman.

/s/ Martin L. Pitha
Martin L. Pitha
SMITH LILLIS PITHA LLP
One Corporate Plaza Drive, Suite 110
Newport Beach, CA 92660

Attorneys for Appellant
Hazel Green Ranch, LLC

9th Circuit Case Number(s) 10-16519

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

*********************************************************************************

## CERTIFICATE OF SERVICE
## When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) Feb 11, 2011 .

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format) /s/ Martin L. Pitha

*********************************************************************************

## CERTIFICATE OF SERVICE
## When Not All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date) .

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)